**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SEAN TAITT,** | § |
| | § |
| and | § |
| | § |
| **CRAIG FREEMAN,** | § |
| **MARY OUSLEY,** | § |
| **ANGELA BROWN,** | § |
| **ABIGAIL PRATHER,** | § |
| **MAIA FREEMAN,** | § |
| **VERONICA REESE,** | § |
| | § |
| and | § |
| | § |
| **MICHAEL PROCTOR,** | § |
| | § |
| and | § |
| | § |
| **ISADORE SIMS,** | § |
| **ALAXANDER SIMS,** | § |
| **TAEBRYANNA SIMS,** | § |
| | § **CIVIL ACTION NO.** _____ |
| and | § |
| | § |
| **SHEILA COOPER,** | § |
| **LYNELL COOPER,** | § |
| | § |
| and | § |
| | § |
| **RODNEY R. JACKSON,** | § |
| **DIQUAN S. JACKSON,** | § |
| **JACQUEZ S. JACKSON,** | § |
| **TIFFANY MAJOR,** | § |
| | § |
| and | § |
| | § |
| **MARLON O'NEIL,** | § |
| **LORENA O'NEIL,** | § |
| **FRANKLIN O'NEIL,** | § |
| **DELORIS O'NEIL,** | § |
| | § |
| and | § |
| | § |
| **DONNA GREEN,** | § |

1

**JAKARI GREEN,**                    §
                                     §
and                                  §
                                     §
**TIFFANY PUTMAN,**                  §
**STEPHANIE PUTMAN,**                §
                                     §
and                                  §
                                     §
**JERMAINE AYDELOTT;**               §
**INDIVIDUALLY AND AS**              §
**NEXT FRIEND OF**                   §
**K.A., a MINOR,**                   §
**DONTAE AYDELOTT,**                 §
                                     §
and                                  §
                                     §
**MARLON CARTER,**                   §
**TONI CARTER,**                     §
**TIFFANY CARTER,**                  §
**TYRENA CARTER,**                   §
**EUGENE CARTER,**                   §
                                     §
and                                  §
                                     §
**DEON MACK,**                       §
**ASHILIA MACK,**                    §
                                     §
and                                  §
                                     §
**KEELTA MILLS,**                    §
**DONALD LOWERS,**                   §
**MARY WARD,**                       §
                                     §
and                                  §
                                     §
**BRYAN MITCHELL, SR.,**             §
                                     §
and                                  §
                                     §
**AARON MORGAN,**                    §
                                     §
and                                  §
                                     §
**ADRIAN PAYNE; INDIVIDUALLY**       §
**AND AS NEXT FRIEND OF**            §

**J.P., A MINOR,** §
**VANESSA PAYNE,** §
**NYSHANTE PAYNE,** §
**KENNETH PAYNE,** §
**SHERITA PAYNE,** §
§
and §
§
**SHAVAR REYNOLDS,** §
§
and §
§
**ANGEL SIMMONS,** §
**PAUL GRAHAM,** §
**LEONIA GRAHAM,** §
§
and §
§
**STAFFORD TYSON,** §
**NITAUSHA TYSON,** §
§
and §
§
**DETARENCE HARRIS,** §
**DOMINIQUE HARRIS,** §
§
and §
§
**TAYINIKIA CARLTON,** §
§
and §
§
**MISS BELCHER; INDIVIDUALLY** §
**AND AS NEXT FRIEND OF** §
**N.J., A MINOR, AND** §
**KRISTION BELCHER** §
§
and §
§
**CHARROD TAYLOR;** §
**INDIVIDUALLY AND AS** §
**NEXT FRIEND OF K.T., L.T., AND** §
**M.T., MINORS,** §
**ROSE NEAL,** §
**OSA NEAL,** §
**TASHOMBA TAYLOR,** §

and                                                   §
                                                      §
                                                      §
**JAJA O'NEIL; INDIVIDUALLY**                         §
**AND AS NEXT FRIEND OF E.O.,**                        §
**J.K.O., AND J.M.O., MINORS,**                        §
**TONYA M. O'NEIL, AND**                               §
**JASMINE BAKER,**                                     §
                                                      §
and                                                   §
                                                      §
**DENIZE ALTON-JOHNSON;**                              §
**INDIVIDUALLY AND AS NEXT**                           §
**FRIEND OF D.J., A MINOR,**                           §
**YVETTE FRANKLIN, AND**                               §
**ERIK ALTON,**                                        §
                                                      §
                                                      §
*Plaintiffs*                                          §
                                                      §
**v.**                                                §
                                                      §
**THE ISLAMIC REPUBLIC OF IRAN,**                     §
                                                      §
and                                                   §
                                                      §
**THE REPUBLIC OF SUDAN,**                            §
                                                      §
*Defendants*                                          §

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, by and through their undersigned counsel, seek judgment against Defendants, the Islamic Republic of Iran ("Iran") and the Republic of Sudan ("Sudan"), jointly and severally, pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A. Twenty-five (25) of the named Plaintiffs (hereinafter the "Navy-Plaintiffs") are former United States Navy sailors stationed aboard the USS Cole in the Port of Aden, Yemen during the October 12, 2000 bombing of the ship. Because of this attack, the Navy-Plaintiffs suffered severe physical

and/or emotional injuries. The remaining Plaintiffs (hereinafter the "Family-Plaintiffs") are immediate family members of the Navy-Plaintiffs who suffered significant emotional trauma because of the Navy-Plaintiffs' post-attack injuries.

In *Flanagan v. Islamic Republic of Iran*, 87 F. Supp. 3d 93, 116–17 (D.D.C. 2015), this Court found that Iran and Sudan both provided long-standing material support, including financing and extensive technical training, to the terrorist organization Al-Qaeda. In turn, Al-Qaeda facilitated the planning and execution of the USS Cole bombing. *Id.* at 117. Thus, this Court concluded that Al-Qaeda and its infamous founder, Osama Bin Laden, "would not have been able to carry out the attack on the Cole without the support of the Sudanese defendants[.]" *Id.* at 103. Additionally, before the Cole bombing, Iran was "directly involved in establishing Al-Qaeda's Yemen network and supported training and logistics for Al-Qaeda in the Gulf region." *Id.* at 117. For these reasons, pursuant to 28 U.S.C. § 1605A(C), this Court held Iran and Sudan jointly and severally liable for the damages suffered by the family of a USS Cole sailor tragically killed in the attack. *Id.* at 116–117.

Like *Flanagan*, Plaintiffs' individual damages arise from Al-Qaeda's extrajudicial killing of American sailors stationed aboard the USS Cole on October 12, 2000. Accordingly, Plaintiffs hereby file suit against Defendants Iran and Sudan, as state sponsors of terrorism, under 28 U.S.C. § 1605A(C) for providing material support to Al-Qaeda and playing an instrumental role in the terrorist organization's successful execution of the USS Cole attack.

## I.
## STANDING

**1.1**      Plaintiffs are all United States citizens and have standing to bring this FSIA action under 28 U.S.C. § 1605A(a)(2)(A)(ii)(I). *See Flanagan,* 87 F. Supp. 3d at 112–13.

## II.
## JURISDICTION & VENUE

**2.1**     Plaintiffs seek money damages for personal injuries caused by Iran's and Sudan's provision of significant material support and resources to Al-Qaeda. This support allowed Al-Qaeda to execute acts of extrajudicial killings during the October 12, 2000 USS Cole bombings. Thus, pursuant to the FSIA, 28 U.S.C. § 1605A, and related statutes—including the Torture Victims Protection Act of 1991, Pub. L. No. 102–256, §3(a), 106 Stat. 73,73 (1992), 28 U.S.C. § 1605A(h)(7), and 28 U.S.C. § 1605A(h)(3) (citing 18 U.S.C. § 2339A(b)(1))— Defendants are subject to suit in the courts of the United States, and this Court may assert jurisdiction over the subject matter of this Complaint. *See Flanagan,* 87 F. Supp. 3d at 113.

**2.2**     Sudan is a foreign state within the meaning of 28 U.S.C. § 1391(f). Since **August 12, 1993,** the United States has designated Sudan as a state sponsor of terrorism under Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 2405(j)), Section 40 of the Arms Export Control Act (22 U.S.C. § 2870), and Section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371). *See State Sponsors of Terrorism*, U.S. DEPT. OF STATE, https://www.state.gov/state-sponsors-of-terrorism/ (last visited June 11, 2020).

**2.3**     Defendant Iran is also a foreign state within the meaning of 28 U.S.C. § 1391(f). Since **January 19, 1984**, the United States has designated Iran as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 2405(j)), Section 40 of the Arms Export Control Act (22 U.S.C. § 2870), and Section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371). *See State Sponsors of Terrorism*, U.S. DEPT. OF STATE, https://www.state.gov/state-sponsors-of-terrorism/ (last visited June 11, 2020).

**2.4**     Because Sudan and Iran were designated state sponsors of terrorism, both at the

time of the October 12, 2000 USS Cole attack and at the time this FSIA Complaint was filed,

the Court must exercise its subject matter jurisdiction and hear this claim under 28 U.S.C. §

1605A(a)(2)(A)(i)(I). *See Doe v. Democratic People's Republic of Korea Ministry of Foreign*

*Affairs Jungsong-Dong*, 414 F. Supp. 3d 109, 123 (D.D.C. 2019) (concluding that when an FSIA

Plaintiff satisfies § 1605A(a)(2), "[n]ot only does the Court have subject matter jurisdiction, it

must exercise that jurisdiction").

    **2.5**    The Court may exercise personal jurisdiction over Iran and Sudan upon:

> sending a copy of the summons and complaint and a notice of suit, together
> with a translation of each into the official language of the foreign state, by
> any      form of mail requiring a signed receipt, to be addressed and
> dispatched by the clerk of the court to the head of the ministry of foreign
> affairs of the foreign state concerned.

28 U.S.C. § 1608(a)(3); *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1054 (2019).

Defendants Iran and Sudan may therefore be properly served under the FSIA at the

offices of their respective head of the ministry of foreign affairs:

**The Islamic Republic of Iran**
The Ministry of Foreign Affairs
Attn: Mohammad Javad Zarif
Khomeini Avenue
United Nations Street
Tehran, Iran

**The Republic of Sudan**
The Ministry of Foreign Affairs
Attn: Asma Mohamed Abdalla
Republican People's Palace
Khartoum, Sudan

    **2.6**    In the alternative, if service cannot be made within 30 days under 28 U.S.C.

§ 1608(a)(3), service may be perfected under 28 U.S.C. § 1608(a)(4). *Estate of Hirshfeld v.*

*Islamic Republic of Iran*, No. CV 15-1082 (CKK), 2017 WL 361062, at *2 (D.D.C. Jan. 25,

2017) (Kollar-Kotelly, J.); *see also Flanagan,* 87 F. Supp. 3d at 114 (noting that service via §

1608(a)(4) was necessary because the U.S. does not maintain diplomatic relations with Iran).

**2.7**     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(4).

### III.
### THE PLAINTIFFS

**A.     Sean Taitt**

**3.1**     Plaintiff Sean Taitt is a United States citizen and currently resides in the State of California. Chief Petty Officer Taitt served in the United States Navy and was stationed aboard the USS Cole at the time of the attack. When the bombings occurred, Taitt was on the third deck below the water directly in the path of the blast. Because of the force of the ensuing explosion, Taitt suffered internal bleeding, broken ribs, lacerations, shrapnel wounds, ruptured eardrums, and a dislocated left leg requiring surgery. Additionally, because of the severity of these injuries, the Navy originally misreported Taitt as a fatality. Taitt received a Purple Heart and is currently rated 100% disabled by the Department of Veteran Affairs (VA).

**B.     The Craig Freeman Family**

**3.2**     Plaintiff Craig Freeman is a United States citizen and currently resides in the State of Florida. Senior Chief Petty Officer Freeman served in the United States Navy and was stationed aboard the USS Cole at the time of the attack. As a result of the attack, Freeman ruptured both eardrums, suffered a traumatic brain injury (TBI), chipped bones in his right elbow, sustained fragment wounds in his left eye, and sustained hot water burns. Furthermore, witnessing "all the carnage" that occurred during the Cole attack still haunts Freeman to this day. Freeman received a Purple Heart and is currently rated 100% disabled by the VA.

**3.3**     Plaintiff Mary Ousley is a United States citizen and currently resides in the State of Georgia. Mary Ousley is Craig Freeman's mother. As a result of the USS Cole attack and Craig Freeman's subsequent injuries, Mary Ousley suffers from mental anguish,

bereavement, grief, and loss of society and comfort.

3.4     Plaintiff Maia Freeman is a United States citizen and currently resides in the State of Georgia. Maia is Craig Freeman's adult daughter. As a result of the USS Cole attack and Craig Freeman's subsequent injuries, Maia Freeman suffers from mental anguish, bereavement, grief, and loss of society and comfort.

3.5     Plaintiff Angela Brown is a United States citizen and currently resides in the State of Georgia. Angela Brown is Craig Freeman's sister. As a result of the USS Cole attack and Craig Freeman's subsequent injuries, Angela Brown suffers from mental anguish, bereavement, grief, and loss of society and comfort.

3.6     Plaintiff Abigail Prather is a United States citizen and currently resides in the State of Georgia. Abigail Prather is Craig Freeman's sister. As a result of the USS Cole attack and Craig Freeman's subsequent injuries, Abigail Prather suffers from mental anguish, bereavement, grief, and loss of society and comfort.

3.7     Plaintiff Veronica Reese is a United States citizen and currently resides in the State of Georgia. Veronica Reese is Craig Freeman's sister. As a result of the USS Cole attack and Craig Freeman's subsequent injuries, Veronica Reese suffers from mental anguish, bereavement, grief, and loss of society and comfort.

C.     **Michael Proctor**

3.8     Plaintiff Michael Proctor is a United States citizen and currently resides in the State of Maryland. Petty Officer Third Class Proctor served in the United States Navy and was stationed aboard the USS Cole at the time of the attack. As a result of the attack, Proctor was hit by shrapnel and knocked unconscious. After he regained consciousness, Proctor noticed that several of his fellow sailors were deceased and their bodies were lying on top of him. In

fact, nearby sailors had to help remove these bodies before Proctor could stand. Additionally, Proctor ultimately underwent lower back surgery to remove the embedded shrapnel. Because of the USS Cole attack, Proctor currently suffers from post-traumatic stress disorder (PTSD), a TBI, depression, and anxiety. He is rated 80% disabled by the VA.

**D.     The Isadore Sims Family**

3.9     Plaintiff Isadore Sims is a United States citizen and currently resides in the State of Louisiana. Postal Clerk Second Class Sims served in the United States Navy and was stationed aboard the USS Cole at the time of the attack. At the time of the bombing, Sims was located on the mess deck. The force of the ensuing blast hit the mess deck directly and caused Sims to sustain severe spinal injuries. Specifically, Sims' spinal tissue was severed, resulting in the premature end of his naval service. Sims later received a Purple Heart. Currently, Sims suffers from PTSD and migraines and is rated 70% disabled by the VA, as a result of the USS Cole attack.

3.10    Plaintiff Alexander Sims is a United States citizen and currently resides in the State of Louisiana. Alexander is Isadore Sims' adult son. As a result of the USS Cole attack and Isadore Sims' subsequent injuries, Alexander Sims suffers from mental anguish, bereavement, grief, and loss of society and comfort.

3.11    Plaintiff Taebryanna Sims is a United States citizen and currently resides in the State of Alabama. Taebryanna is Isadore Sims' adult daughter. As a result of the USS Cole attack and Isadore Sims' subsequent injuries, Taebryanna Sims suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**E.     The Sheila Cooper Family**

3.12    Plaintiff Sheila Cooper is a United States citizen and currently resides in the

State of Mississippi. Petty Officer Third Class Cooper served in the United States Navy and was stationed aboard the USS Cole at the time of the attack. Prior to the bombing, Cooper had just finished walking through the lunch line. The ensuing explosion knocked Cooper against a wall, causing her to hit her head with significant force. Following the attack, Cooper developed insomnia, PTSD, major depressive disorder, a nicotine dependence, hypertension, and headaches. Cooper is rated 40% disabled by the VA.

**3.13**    Plaintiff Lynell Cooper is a United States citizen and currently resides in the State of Mississippi. Lynell is Sheila Cooper's sister. As a result of the USS Cole attack and Sheila Cooper's subsequent injuries, Lynell Cooper suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**F.    The Rodney R. Jackson Family**

**3.14**    Plaintiff Rodney R. Jackson is a United States citizen and currently resides in the State of Florida. Jackson served in the United States Navy and was stationed aboard the USS Cole at the time of the attack. Prior to the bombing, Jackson was on watch on the quarterdeck. The ensuing explosion shook everything around Jackson, causing hot oil and water to spill onto Jackson's face and severely burn his scalp. Thereafter, the water tank door hit Jackson's knee, and Jackson was then slammed against the wall. Following the attack, Jackson developed hearing complications, PTSD, anxiety, and depression. Jackson is rated 50% disabled by the VA.

**3.15**    Plaintiff Diquan S. Jackson is a United States citizen and currently resides in the State of Florida. Diquan is Rodney Jackson's adult son. As a result of the USS Cole attack and Rodney Jackson's subsequent injuries, Diquan S. Jackson suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**3.16**     Plaintiff Jacquez S. Jackson is a United States citizen and currently resides in the State of Florida. Jacquez is Rodney Jackson's adult son. As a result of the USS Cole attack and Rodney Jackson's subsequent injuries, Jacquez S. Jackson suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**3.17**     Plaintiff Tiffany Major is a United States citizen and currently resides in the State of South Carolina. Tiffany Major is Rodney Jackson's adult daughter. As a result of the USS Cole attack and Rodney Jackson's subsequent injuries, Tiffany Major suffers from mental anguish, bereavement, grief, and loss of society and comfort.

## G.     The Marlon O'Neil Family

**3.18**     Plaintiff Marlon O'Neil is a United States citizen and currently resides in the State of South Carolina. Petty Officer First Class O'Neil served in the United States Navy and was stationed aboard the USS Cole at the time of the attack. Prior to the bombing, O'Neil was in the ship's administration office sending emails to his family. During the ensuing explosion, O'Neil was able to move to the General Quarters station and take shelter. However, the force of the explosion caused O'Neil to develop migraine headaches. O'Neil also suffers from PTSD as a result of the attack and is rated 100% disabled by the VA.

**3.19**     Plaintiff Lorena O'Neil is a United States citizen and currently resides in the State of South Carolina. Lorena is Marlon O'Neil's wife. As a result of the USS Cole attack and Marlon O'Neil's subsequent injuries, Lorena O'Neil suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**3.20**     Plaintiff DeLoris O'Neil is a United States citizen and currently resides in the State of South Carolina. DeLoris is Marlon O'Neil's mother. As a result of the USS Cole attack and Marlon O'Neil's subsequent injuries, DeLoris O'Neil suffers from mental anguish,

bereavement, grief, and loss of society and comfort.

**3.21**    Plaintiff Franklin O'Neil is a United States citizen and currently resides in the State of South Carolina. Franklin is Marlon O'Neil's father. As a result of the USS Cole attack and Marlon O'Neil's subsequent injuries, Franklin O'Neil suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**H.    The Donna Green Family**

**3.22**    Plaintiff Donna Green is a United States citizen and currently resides in the State of North Carolina. Petty Officer Second Class Green served in the United States Navy and was stationed aboard the USS Cole at the time of the attack. Prior to the bombing, Green was cleaning lockers in her workspace on the starboard side of the ship. The force of the ensuing explosion knocked Green away from the lockers and caused her to lose consciousness. As a result of the attack, Green suffers from chronic PTSD rated at 70% disabling by the VA. To help alleviate the severity of her condition, Green sought psychological treatment through a two-week intensive care program for injured veterans.

**3.23**    Plaintiff Jakari Green is a United States citizen and currently resides in the State of North Carolina. Jakari is Donna Green's adult daughter. As a result of the Cole attack and Donna Green's subsequent injuries, Jakari Green suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**I.    The Tiffany Putman Family**

**3.24**    Plaintiff Tiffany Putman is a United States citizen and currently resides in the State of South Carolina. Chief Petty Officer Putman served in the United States Navy and was stationed aboard the USS Cole at the time of the attack. Prior to the bombing, Putman was walking past the ship post office. The force of the ensuing explosion knocked Putman

unconscious. When she awoke, Putman was being dragged down the hall by her fellow sailors. As a result of the attack, Putman suffers from hearing loss in her right ear, PTSD, depression, and anxiety. Putman received a Purple Heart and is rated 90% disabled by the VA.

3.25     Plaintiff Stephanie Putman is a United States citizen and currently resides in the State of California. Stephanie is Tiffany Putman's adult daughter. As a result of the USS Cole attack and Tiffany Putman's subsequent injuries, Stephanie Putman suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**J.      The Jermaine Aydelott Family**

3.26     Plaintiff Jermaine Aydelott, individually and as next friend of K.A., a minor, is a United States citizen and currently resides in the State of Maryland. Petty Officer Third Class Aydelott served in the United States Navy and was stationed aboard the USS Cole at the time of the attack. Prior to the bombing, Aydelott was in the ship's engineering bathroom. The ensuing explosion disabled the bathroom lights and knocked Aydelott to the ground. Thereafter, Aydelott assisted in a search and rescue mission by carrying the bodies of deceased sailors off the ship. As such, Aydelott came into direct contact with numerous mangled corpses. During this mission, Aydelott also observed several fellow sailors suffering from life-threatening physical injuries. Because of this traumatic experience, Aydelott currently suffers from depression, anxiety, cold sweats, and panic attacks. The force of the USS Cole bombing also caused Aydelott to develop hearing loss, and he is rated at 10% disabling by the VA.

3.27     K.A., a minor, is a United States citizen and currently resides in the State of Maryland. K.A. is Jermaine Aydelott's minor son. As a result of the USS Cole attack and Jermaine Aydelott's subsequent injuries, K.A. suffers from mental anguish, bereavement, grief, and loss of society and comfort.

3.28    Plaintiff Dontae Aydelott is a United States citizen and currently resides in the State of Maryland. Dontae is Jermaine Aydelott's wife. As a result of the USS Cole attack and Jermaine Aydelott's subsequent injuries, Dontae Aydelott suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**K.    The Marlon Carter Family**

3.29    Plaintiff Marlon Carter is a United States citizen and currently resides in the State of Pennsylvania. Carter served in the United States Navy and was stationed aboard the USS Cole at the time of the attack. Prior to the bombing, Carter was working on the ship's mess deck. After the ensuing explosion, Carter took shelter in the ship's gallery. At this time, Carter saw the decapitated head of one of his fellow sailors lying in the gallery sink. Because of this specific memory and the overall trauma he experienced during the Cole attack, Carter currently suffers from PTSD. This condition is rated 70% disabling by the VA.

3.30    Toni Carter is a United States citizen and currently resides in the State of Pennsylvania. Toni is Marlon Carter's wife. As a result of the USS Cole attack and Marlon Carter's subsequent injuries, Toni Carter suffers from mental anguish, bereavement, grief, and loss of society and comfort.

3.31    Tiffany Carter is a United States citizen and currently resides in the State of Pennsylvania. Tiffany is Marlon Carter's adult daughter. As a result of the USS Cole attack and Marlon Carter's subsequent injuries, Tiffany Carter suffers from mental anguish, bereavement, grief, and loss of society and comfort.

3.32    Tyrena Carter is a United States citizen and currently resides in the State of Pennsylvania. Tyrena is also Marlon Carter's adult daughter. As a result of the USS Cole attack and Marlon Carter's subsequent injuries, Tyrena Carter suffers from mental anguish,

bereavement, grief, and loss of society and comfort.

**3.33**   Eugene Carter is a United States citizen and currently resides in the State of Pennsylvania. Eugene is Marlon Carter's adult son. As a result of the USS Cole attack and Marlon Carter's subsequent injuries, Eugene Carter suffers from mental anguish, bereavement, grief, and loss of society and comfort.

## L.   The Deon Mack Family

**3.34**   Plaintiff Deon Mack is a United States citizen and currently resides in the State of Florida. Petty Officer First Class Mack served in the United States Navy and was stationed aboard the USS Cole at the time of the attack. Prior to the bombing, Mack was in chow line at the ship's mess hall. After the ensuing explosion, Mack was knocked to the ground. During the post-explosion chaos, Mack witnessed numerous disfigured body parts belonging to his fellow sailors and a horrifying amount of blood and guts. Because of this specific memory and the overall trauma he experienced during the Cole attack, Mack currently suffers from PTSD. This condition is rated 30% disabling by the VA.

**3.35**   Ashilia Mack is a United States citizen and currently resides in the State of Florida. Ashilia is Deon Mack's adult daughter. As a result of the USS Cole attack and Deon Mack's subsequent injuries, Ashilia Mack suffers from mental anguish, bereavement, grief, and loss of society and comfort.

## M.   The Keelta Mills Family

**3.36**   Plaintiff Keelta Mills is a United States citizen and currently resides in the State of Virginia. Seaman Apprentice Mills served in the United States Navy and was stationed aboard the USS Cole at the time of the attack. Prior to the bombing, Mills had just been relieved from watch duty. Thereafter, she was ordered to her battle station to assist sailors injured from

the attack. Accordingly, Mills witnessed many of her fellow sailors suffering from severe physical injuries. Furthermore, she witnessed many deceased sailors, including the mangled bodies of two of her best friends folded inside a collapsed bulkhead. Because of these specific memories and the overall trauma she experienced during the Cole attack, Mills currently suffers from PTSD. This condition is rated 90% disabling by the VA and causes Mills to frequently suffer from insomnia.

**3.37**     Plaintiff Donald Lowers is a United States citizen and currently resides in the State of Virginia. Lowers is Keelta Mills' husband. As a result of the USS Cole attack and Keelta Mills' subsequent injuries, Donald Lowers suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**3.38**     Plaintiff Mary Ward is a United States citizen and currently resides in the State of Virginia. Ward is Keelta Mills' mother. As a result of the USS Cole attack and Keelta Mills' subsequent injuries, Mary Ward suffers from mental anguish, bereavement, grief, and loss of society and comfort.

## N.     Bryan Mitchell, Sr.

**3.39**     Plaintiff Bryan Mitchell, Sr. is a United States citizen and currently resides in the State of Wisconsin. Petty Officer Second Class Mitchell served in the United States Navy and was stationed aboard the USS Cole at the time of the attack. Prior to the bombing, Mitchell had just finished emailing his wife. Thereafter, Mitchell was ordered to his battle station. He then put on his equipment and began to help gather the bodies of fallen sailors throughout the ship. Mitchell also helped transport injured sailors who needed urgent medical attention. Because of these specific memories and the overall trauma he experienced during the Cole attack, Mitchell currently suffers from PTSD, anxiety, depression, and panic attacks.

Mitchell's PTSD is rated 70% disabling by the VA.

**O.      Aaron Morgan**

**3.40**      Plaintiff Aaron Morgan is a United States citizen and currently resides in the State of Mississippi. Petty Officer First Class Morgan served in the United States Navy and was stationed aboard the USS Cole at the time of the attack. At the time of the bombing, Morgan was attending a moral welfare and recreation meeting in the ship classroom. The classroom was located approximately 100 feet from the blast under the water line. Because of this specific memory and the overall trauma he experienced during the Cole attack, Morgan currently suffers from mental anguish.

**P.      The Adrian Payne Family**

**3.41**      Plaintiff Adrian Payne, individually and as next friend of J.P., a minor, is a United States citizen and currently resides in the State of Tennessee. Petty Officer First Class Payne served in the United States Navy and was stationed aboard the USS Cole at the time of the attack. Prior to the bombing, Payne was on the middle deck of the ship. Thereafter, he was ordered to search the ship for bodies to identify the deceased and offer medical assistance to surviving sailors. Accordingly, Payne witnessed numerous mangled bodies, including the decapitated head of one of his fellow sailors lying in a sink. Moreover, Payne was forced to "decide who to help and who to leave for dead." Because of these specific memories and the overall carnage he witnessed during the Cole attack, Payne currently suffers from PTSD. Payne was rated 100% disabled by the VA, and his PTSD causes him to frequently wake up in the middle of the night due to terrible nightmares. To help alleviate the severity of this condition, Payne sought psychological treatment through a two-week intensive care program for injured veterans.

3.42     J.P. is a United States citizen and currently resides in the State of Tennessee. J.P. is Adrian Payne's minor son. As a result of the USS Cole attack and Adrian Payne's subsequent injuries, J.P. suffers from mental anguish, bereavement, grief, and loss of society and comfort.

3.43     Plaintiff Vanessa Payne is a United States citizen and currently resides in the State of Tennessee. Vanessa Payne is Adrian Payne's wife. As a result of the USS Cole attack and Adrian Payne's subsequent injuries, Vanessa Payne suffers from mental anguish, bereavement, grief, and loss of society and comfort.

3.44     Plaintiff Nyshante Payne is a United States citizen and currently resides in the State of Tennessee. Nyshante Payne is Adrian Payne's adult daughter. As a result of the USS Cole attack and Adrian Payne's subsequent injuries, Nyshante Payne suffers from mental anguish, bereavement, grief, and loss of society and comfort.

3.45     Plaintiff Kenneth Payne is a United States citizen and currently resides in the State of Tennessee. Kenneth Payne is Adrian Payne's brother. As a result of the USS Cole attack and Adrian Payne's subsequent injuries, Kenneth Payne suffers from mental anguish, bereavement, grief, and loss of society and comfort.

3.46     Plaintiff Sherita Payne a United States citizen and currently resides in the State of Tennessee. Sherita Payne is Adrian Payne's sister. As a result of the USS Cole attack and Adrian Payne's subsequent injuries, Sherita Payne suffers from mental anguish, bereavement, grief, and loss of society and comfort.

## Q.     Shevar Reynolds

3.47     Plaintiff Shevar Reynolds is a United States citizen and currently resides in the State of Georgia. Senior Chief Petty Officer Reynolds served in the United States Navy and

was stationed aboard the USS Cole at the time of the attack. Prior to the bombing, Reynolds was below the ship's water line, located one deck down from the main deck. Thereafter, Reynolds joined the fire squad that led a search and rescue mission throughout the ship. Accordingly, Reynolds rescued numerous sailors who were suffering from severe injuries and also discovered multiple mangled bodies of fallen sailors. For example, Reynolds recalls the horror of witnessing the late Craig Wibberley's eye hanging out from its socket. Because of this specific memory and the overall trauma he experienced during the Cole attack, Reynolds suffers from PTSD, anxiety, and depression. Reynolds' PTSD is rated 50% disabling by the VA, and he received an 80% overall disabling rating.

**R.      The Angel Simmons Family**

3.48    Plaintiff Angel Simmons is a United States citizen and currently resides in the State of Virginia. Chief Petty Officer Simmons served in the United States Navy and was stationed aboard the USS Cole at the time of the attack. Prior to the bombing, Simmons was in her room about to take a nap. The force of the ensuing explosion lifted her in the air and caused her to violently hit the floor. Thereafter, Simmons witnessed a fellow sailor slide across the USS Cole due to the sudden disruption in the ship's equilibrium. Because of the overall trauma she experienced during the Cole attack, Simmons currently suffers from chronic PTSD, insomnia, depression, and anxiety. For example, because she survived the attack, Simmons sometimes experiences an overwhelming sense of guilt. Simmons also developed a lumbar strain following the Cole attack. The VA rates this condition as 40% disabling and rates Simmons' PTSD and insomnia as 70% disabling. Overall, Simmons received a 100% overall disability rating from the VA.

3.49    Plaintiff Paul Graham is a United States citizen and currently resides in the

State of South Carolina. Paul Graham is Angel Simmons' father. As a result of the USS Cole attack and Angel Simmons' subsequent injuries, Paul Graham suffers from mental anguish, bereavement, grief, and loss of society and comfort.

    **3.50**    Plaintiff Leonia Graham is a United States citizen and currently resides in the State of South Carolina. Leonia Graham is Angel Simmons' mother. As a result of the USS Cole attack and Angel Simmons' subsequent injuries, Leonia Graham suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**S.**    **The Stafford Tyson Family**

    **3.51**    Plaintiff Stafford Tyson is a United States citizen and currently resides in the State of Virginia. Chief Petty Officer Tyson served in the United States Navy and was stationed aboard the USS Cole at the time of the attack. Prior to the bombing, Tyson was enjoying his lunch in the ship mess hall. Thereafter, Tyson grabbed his weapon and ran to the top of the deck. From the top deck, Tyson witnessed many of his fellow sailors suffering from severe physical injuries. Because of this specific memory and the overall trauma he experienced during the Cole attack, Simmons currently suffers from PTSD, depression, and anxiety. The VA rates this condition as 30% disabling.

    **3.52**    Plaintiff Nitashua Tyson is a United States citizen and currently resides in the State of Virginia. Nitashua Tyson is Stafford Tyson's wife. As a result of the USS Cole attack and Stafford Tyson's subsequent injuries, Nitashua Tyson suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**T.**    **The Detarence Harris Family**

    **3.53**    Plaintiff Detarence Harris is a United States citizen and currently resides in the State of Virginia. Petty Officer Third Class Harris served in the United States Navy and was

stationed aboard the USS Cole at the time of the attack. At the time of the bombing, Harris was standing at the water line about four to five feet from the blast. As a result, Harris sustained shrapnel wounds. Additionally, because of the overall trauma he experienced during the Cole attack, Harris currently suffers from PTSD. Harris is rated 50% disabled by the VA.

3.54    Plaintiff Dominique Harris is a United States citizen and currently resides in the State of Virginia. Dominque is Detarence Harris' wife. As a result of the USS Cole attack and Detarence Harris' subsequent injuries, Dominque Harris suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**U.    Tayinikia Carlton**

3.55    Plaintiff Tayinikia Carlton is a United States citizen and currently resides in the State of North Carolina. Seamen Carlton served in the United States Navy and was stationed aboard the USS Cole at the time of the attack. At the time of the bombing, Carlton was in the medical facility located on the starboard side of the ship. Because of the facility's proximity to the blast, the force of the ensuing explosion threw Carlton backwards and dislodged the doors in the room. Smoke then began to fill the room. During this chaos, Carlton observed several of her fellow sailors suffering from severe injuries. Because of this specific memory and the overall trauma she experienced during the Cole attack, Carlton currently suffers from PTSD, anxiety, and depression. Carlton is rated 100% disabled by the VA.

**V.    The Miss Belcher Family**

3.56    Plaintiff Miss Belcher, individually and as next friend of N.J., a minor, is a United States citizen and currently resides in the State of California. Petty Officer Second Class Belcher served in the United States Navy and was stationed aboard the USS Cole at the time of the attack. Prior to the bombing, Belcher was attending a meeting. Thereafter, the TV

fell off the bracket and Belcher rushed to the Defcon Station. During the post-explosion chaos, Belcher witnessed her fellow sailors bleeding from their ears and suffering from severe shrapnel injuries. She also performed CPR on one of these sailors. Furthermore, on the way to the opposite side of the ship, Belcher witnessed the mangled corpse of a sailor whose body was blown apart in the blast. Because of these specific memories and the overall trauma she experienced during the Cole attack, Belcher currently suffers from PTSD, major depressive disorder, anxiety, and migraines. Belcher is rated 90% disabled by the VA.

3.57    N.J. is a United States citizen and currently resides in the State of California. N.J. is Miss Belcher's minor son. As a result of the USS Cole attack and Miss Belcher's subsequent injuries, N.J. suffers from mental anguish, bereavement, grief, and loss of society and comfort.

3.58    Kristion Belcher is a United States citizen and currently resides in the State of California. Kristion is Miss Belcher's adult son. As a result of the USS Cole attack and Miss Belcher's subsequent injuries, Kristion Belcher suffers from mental anguish, bereavement, grief, and loss of society and comfort.

## W.    The Charrod Taylor Family

3.59    Plaintiff Charrod Taylor, individually and as next friend of K.T., L.T., and M.T., minors, is a United States citizen and currently resides in the State of Georgia. Petty Officer Second Class Taylor served in the United States Navy and was stationed aboard the USS Cole at the time of the attack. Prior to the bombing, Taylor was on duty near the blasts. Thereafter, Taylor saw smoke everywhere and noticed bodies lying on the deck and floating in the water. Taylor also helped identify and move the deceased. Because of these specific memories and the overall trauma he experienced during the Cole attack, Taylor currently

suffers from PTSD that is rated 70% disabling by the VA, anxiety, and depression. To manage these injuries, Taylor often receives professional mental health counseling.

**3.60**    K.T. is a United States citizen and currently resides in the State of Georgia. K.T. is Charrod Taylor's minor daughter. As a result of the USS Cole attack and Charrod Taylor's subsequent injuries, K.T. suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**3.61**    L.T. is a United States citizen and currently resides in the State of Georgia. K.T. is Charrod Taylor's minor son. As a result of the USS Cole attack and Charrod Taylor's subsequent injuries, L.T. suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**3.62**    M.T. is a United States citizen and currently resides in the State of Georgia. M.T. is Charrod Taylor's minor son. As a result of the USS Cole attack and Charrod Taylor's subsequent injuries, M.T. suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**3.63**    Plaintiff Rose Neal is a United States citizen and currently resides in the State of Georgia. Rose Neal is Charrod Taylor's mother. As a result of the USS Cole attack and Charrod Taylor's subsequent injuries, Rose Neal suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**3.64**    Plaintiff Osa Neal is a United States citizen and currently resides in the State of Georgia. Osa Neal is Charrod Taylor's sister. As a result of the USS Cole attack and Charrod Taylor's subsequent injuries, Osa Neal suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**3.65**    Plaintiff Tashomba Taylor is a United States citizen and currently resides in the

State of Georgia. Tashomba Taylor is Charrod Taylor's sister. As a result of the USS Cole attack and Charrod Taylor's subsequent injuries, Tashomba Taylor suffers from mental anguish, bereavement, grief, and loss of society and comfort.

## X.      The Jaja O'Neil Family

**3.66**      Plaintiff Jaja O'Neil, individually and as next friend of E.O., J.K.O., and J.M.O., minors, is a United States citizen and currently resides in the State of Virginia. O'Neil served in the United States Navy and was stationed aboard the USS Cole at the time of the attack. Prior to the bombing, O'Neil had just walked past the blast site and was in the ship's Combat Information Center. Thereafter, O'Neil was thrown against the overhead compartment and hit his head, shoulders, and back. O'Neil then landed against the ship floor with significant force. While struggling with a disorienting post-blast headache and earache, O'Neil was ordered to go to either the General Orders Station or Battle Stations. O'Neil later gave another sailor his shotgun and began to help extracting the injured and deceased. While performing this duty, O'Neil witnessed the mangled bodies of numerous sailors. Because of these specific memories and the overall trauma he experienced during the Cole attack, O'Neil currently suffers from PTSD, sleep apnea, joint pain, and migraines. O'Neil is rated 80% disabled by the VA.

**3.67**      E.O. is a United States citizen and currently resides in the State of Virginia. E.O. is Jaja O'Neil's minor son. As a result of the USS Cole attack and Jaja O'Neil's subsequent injuries, E.O. suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**3.68**      J.K.O. is a United States citizen and currently resides in the State of Virginia. J.K.O. is Jaja O'Neil's minor son. As a result of the USS Cole attack and Jaja O'Neil's

subsequent injuries, J.K.O. suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**3.69**      J.M.O. is a United States citizen and currently resides in the State of Virginia. J.M.O. is Jaja O'Neil's minor son. As a result of the USS Cole attack and Jaja O'Neil's subsequent injuries, J.M.O. suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**3.70**      Plaintiff Tonya O'Neil is a United States citizen and currently resides in the State of Virginia. Tonya is Jaja O'Neil's wife. As a result of the USS Cole attack and Jaja O'Neil's subsequent injuries, Tonya O'Neil suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**3.71**      Plaintiff Jasmine Baker is a United States citizen and currently resides in the State of Indiana. Jasmine Baker is Jaja O'Neil's adult daughter. As a result of the USS Cole attack and Jaja O'Neil's subsequent injuries, Jasmine Baker suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**Y.      The Denize Alton-Johnson Family**

**3.72**      Plaintiff Denize Alton-Johnson, individually and as next friend of D.J., a minor, is a United States citizen and currently resides in the State of Virginia. Petty Officer First Class Alton-Johnson served in the United States Navy and was stationed aboard the USS Cole at the time of the attack. Prior to the bombing, Alton-Johnson was sitting in the ship's annex by heavy duty safes. Thereafter, the power went off and the force of the blast dislodged the doors to these safes. The post-blast debris and dust also caused Alton-Johnson to suffer arm injuries. Additionally, Alton-Johnson stepped over multiple bodies after she left the annex. Because of these specific memories and the overall trauma she experienced during the Cole attack, Alton-

Johnson currently suffers from PTSD, anxiety, depression, mood disorders, and sleep disorders. Alton-Johnson is rated 90% disabled by the VA.

**3.73**     D.J. is a United States citizen and currently resides in the State of Virginia. D.J. is Denize Alton-Johnson's minor son. As a result of the USS Cole attack and Denize Alton-Johnson's subsequent injuries, D.J. suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**3.74**     Plaintiff Yvette Franklin is a United States citizen and currently resides in the State of Virginia. Yvette Franklin is Denize Alton-Johnson's mother. As a result of the USS Cole attack and Denize Alton-Johnson's subsequent injuries, Yvette Franklin suffers from mental anguish, bereavement, grief, and loss of society and comfort.

**3.75**     Plaintiff Erik Alton is a United States citizen and currently resides in the State of Virginia. Erik Alton is Denize Alton-Johnson's brother. As a result of the USS Cole attack and Denize Alton-Johnson's subsequent injuries, Erik Alton suffers from mental anguish, bereavement, grief, and loss of society and comfort.

## IV.
## FACTUAL ALLEGATIONS

**4.1**     The following facts were found by this Court in *Flanagan v. Islamic Republic of Iran*, 87 F. Supp. 3d 93 (D.D.C. 2015).

**A.      The USS Cole Bombing**

**4.2**     "At approximately 8:30 a.m. on October 12, 2000, the Cole entered the Port of Aden, Yemen, to temporarily stop for refueling. The Cole, an Arleigh Burke Class Destroyer, was the twenty-fifth Navy ship to stop in Aden Harbor for refueling over the previous nineteen months. As of October 2000, the ship had a crew of twenty-six officers and 270 enlisted personnel. The Cole departed from its home port of Norfolk, Virginia, on August 8, 2000, before

patrolling the Mediterranean Sea. On October 9, 2000, the ship transited the Suez Canal and headed for Yemen. At the time that the ship entered the Port of Aden on October 12, 2000, the U.S. Department of Defense terrorist threat level in Aden was 'Threat Condition (THREATCON) BRAVO,' which indicated an 'increased and more predictable threat of terrorist activity.'" *Flanagan,* 87 F. Supp. 3d at 98 (citing *Rux, et. al. v. Republic of Sudan*, 495 F.Supp.2d 541 (E.D. Va. 2007)).

    **4.3**    "At approximately 8:49 a.m., the Cole moored starboard side to Refueling Dolphin Seven, near the mouth of the harbor. The ship began refueling at approximately 10:31 a.m. At approximately 11:10 a.m., one of the sailors standing watch over the refueling noticed a small boat heading 'fast and hard' toward the Cole from the direction of the city. The boat, painted white with fire red trim, was about thirty-five feet long and six to seven feet wide and had a shallow V-hull. It looked 'brand new.' The boat was similar in size and shape to many other small vessels in the harbor, including the service craft that had been alongside the Cole." *Id*.

    **4.4**    "The boat was manned by two males, both of whom appeared to be in their early thirties. The two men slowed the boat as they approached the Cole, maneuvered it parallel to the ship and came down the port side headed aft. As they did so, the two men in the boat were smiling, and waved to the crew. Seconds later, the boat exploded." *Id*.

    **4.5**    "The explosion occurred between approximately 11:15 and 11:18 a.m., just as some of the crew was sitting down for lunch. The blast ripped a thirty-two-by thirty-six-foot hole in the port side. . . . Smoke, dust, and fuel vapors filled the air. The main engine room, auxiliary machine room, and the dry provisions storeroom were flooded. Several chambers, including the Crew and Chief Petty Officer's Galley, were structurally destroyed." *Id*.

4.6     "The blast and its after-effects killed seventeen Navy sailors, all of them American citizens." *Id*.

4.7     The terrorist organization Al-Qaeda carried out the USS Cole bombing. *Flanagan,* 87 F. Supp. 3d at 103, 108. Specifically, Al-Qaeda founder Osama Bin Laden and member Abd Rahim Hussayn Muhamad al Nashiri played an instrumental role in the planning and execution the October 12, 2000 bombing of the ship. *Id.*

## B.   Sudan's Material Support for Bin Laden and Al-Qaeda

4.8     In 1989, General Omar Bashir became President of Sudan following a military coup that overthrew the elected government and converted Sudan into an Islamic Arab State. *Id*. at 98–99. This coup was orchestrated by Hasan Al Turabi, head of the National Islamic Front ("NIF"), a Sudanese political party. Turabi was in power from 1989 until late 1999. *Id*. at 99.

4.9     Osama Bin Laden moved to Sudan in 1991 and lived there until 1996. *Id*. at 97, 99. During this time, Sudan provided "sanctuary and safe haven" to Al-Qaeda. *Id.* at 100. For example, when Bin Laden moved to Sudan, the Sudanese government provided Al-Qaeda members with Sudanese travel documentation, including 200 passports. *Id*. at 102. This logistical support "facilitated the movement of Al-Qaeda operatives in and out of Sudan." *Id*. Furthermore, Sudanese officials ensured that Al-Qaeda members traveling to Sudan with different passports could enter and leave the country without a passport stamp. *Id*.

4.10    Throughout Bin Laden's time in Sudan, Sudanese military and intelligence forces also offered technical training to Al-Qaeda. *Id*. at 100. This support was "indispensable for Al-Qaeda not just to survive but also to then develop the expertise, technical knowledge and wide network of contacts that allowed it to flourish as a terrorist organization and carry out the *USS Cole* bombing." *Id*.

**4.11**     Bin Laden also established several joint business ventures with the Sudanese regime that flourished when he moved to Khartoum, Sudan in 1991. *Id*. at 101. For example, he formed "symbiotic business relationships with wealthy NIF members by undertaking civil infrastructure development projects on the regime's behalf." *Id*. These projects were very successful, allowing Bin Laden to fund terrorist activities by laundering money through Sudanese banks and Sudanese legitimate businesses *Id*. For instance, by January 1994, Bin Laden began financing at least three (3) terrorist training camps in northern Sudan. *Id*. at 102. Extremists from Egypt, Algeria, Tunisia, and Palestine were among the "camp residents." *Id*.

**4.12**     In sum, this Court held that without this material support, Bin Laden and Al-Qaeda would not have been able to carry out the attack on the USS Cole. *Id*. at 103.

## C.     Iran's Material Support for Bin Laden and Al-Qaeda

**4.13**     Around 1991, Iran and Sudan formed a "tripartite front" to foster coordination between Sunni and Shia extremists and join forces against their common enemy, the United States of America. *Id.* at 103. This partnership ultimately offered Al-Qaeda the opportunity to develop a relationship with Iranian officials, Hezbollah, and other terrorist organizations "dedicated to attacking United States personnel, military targets, and citizens in the Middle East." *Id*.

**4.14**     Iranians are Shias and Bin Laden was a Suni. Because of these ideological differences, the partnership between Al-Qaeda and Iran was very unusual. However, the relationship was quite successful due to Iran's and Bin Laden's mutual hatred of "infidels in the United States." *Id*. at 104. For example, Iran indirectly provided material support to Al-Qaeda by offering large-scale funding and training to the Lebanese terrorist organization Hezbollah. *Id*. Iran provided this support through the Iran Revolutionary Guard Corps (IRGC), a parallel

military force tasked with protecting Iran's revolution at home and spreading it abroad. *Id*. at

104, 106. Therefore, Hezbollah has maintained a "particularly close relationship with the IRGC"

since Hezbollah was founded in the early 1980s. *Id*. at 106.

    **4.15**    In the early 1990s, Hezbollah enjoyed a high degree of independence in Lebanon.

*Id*. Without the need to hide its operations, Hezbollah offered Al-Qaeda a "superb" level of

training. *Id*. For this reason, in 1993 Al-Qaeda operatives traveled to the Bekka Valley in

Lebanon for training in explosives, intelligence, and security. *Id*. During this camp, Bin Laden

"reportedly showed particular interest in learning how to use truck bombs such as the one that

killed 241 U.S. Marines in Lebanon in 1983." *Id*. In fact, the bomb used in the USS Cole attack

is similar to bombs designed by Hezbollah. *Id.* at 108. Therefore, Al-Qaeda possibly learned to

develop the USS Cole bomb while training with Hezbollah in the early 1990s. *Id.*

    **4.16**    Iran also offered significant logistical support to Al-Qaeda. For instance, Iran's

Ministry of Intelligence and Security (MOIS) offered Al-Qaeda operatives in Iran identification

cards and passports. *Id*. at 104. Iran even allowed certain Al-Qaeda members and leaders to enter

the country without stamping their passports. *Id*. at 107. This logistical support was invaluable

as it facilitated the flow of new Al-Qaeda recruits who lacked experience traveling covertly

between countries. *Id*. at 107–108. The logistical support also enabled better communication

and coordination between various Al-Qaeda strands. *Id.* at 108. Lastly, Iran's logistical support

helped Al-Qaeda maintain its organizational hierarchy. If Al-Qaeda leaders had visas showing

an Iranian stamp or a link to Afghanistan, they would likely attract attention from border security

officials in Middle Eastern countries hostile to Al-Qaeda like Saudi Arabia. *Id*. at 107.

    **4.17**    For these reasons, at the time of the USS Cole bombing, the relationship among

Iran, Bin Laden, and Al-Qaeda was firmly established. Iran also reportedly contributed to Al-

Qaeda's efforts to set up a Yemen terrorist network. For instance, the 1999 U.S. State Department terrorism report noted that Iran was providing training and logistical support to extremist groups like Al-Qaeda operating in the Gulf of Yemen. *Id*. at 108. Because of this material support, Al-Qaeda operative Abd Rahim Hussayn Muhamad al Nashiri, one of the masterminds of the Cole attack, traveled from Yemen to Afghanistan before and after the Cole bombing by way of safe passage through Iran. *See id*. ("Certainly, during the late 1990s and through 2000, Iran was the common route that al-Qaeda members used when traveling from gulf countries such as Yemen to Afghanistan.").

## V.
## RELATED ACTIONS

**5.1**     In 2008, Congress amended the FSIA and moved 28 U.S.C. § 1605(a)(7) to a new section, 28 U.S.C. § 1605A. *See Opati v. Republic of Sudan*, 140 S. Ct. 1601 (2020). In doing so, Congress created an express federal cause of action for acts of terrorism and a limitations period for providing such action. *See id.*; 28 U.S.C. §§1605A(c); 1605A(b).

**5.2**     Under 1605A(b), "[a]n action may be brought or maintained under this section if . . . a related action was commenced under section 1605(a)(7) (before the date of the enactment of this section). . .  not later than the latter of—

**(1)** 10 years after April 24, 1996; or
**(2)** 10 years after the date on which the cause of action arose."

28 U.S.C. § 1605A(b).

**5.3**     Pursuant to § 1605A(b), Plaintiffs hereby commence this action as a "related action" to the following two (2) cases.

A.   *Rux v. the Republic of Sudan,* 495 F. Supp. 2d 541 (E.D. Va. 2007).[1]

**5.4**      The *Rux* Plaintiffs were fifty-nine (59) surviving family members of the seventeen (17) Navy sailors who died aboard the USS Cole on October 12, 2000. *Rux*, 495 F. Supp. 2d at 545–46. Thus, *Rux* arises out of the same incident as this action. On July 16, 2004, the *Rux* Plaintiffs filed a lawsuit against Sudan under § 1605(a)(7) of the FSIA. *Id.* at 543. Like the Plaintiffs in this case, the *Rux* plaintiffs were United States citizens seeking money damages against Sudan for providing material support and assistance to Al-Qaeda. *Id*. Moreover, Sudan was designated a state sponsor of terrorism at the time the *Rux* Plaintiffs timely filed their FSIA claim under § 1605(a)(7) and when Plaintiffs filed this FSIA Complaint under 28 U.S.C. § 1605A. For these reasons, Plaintiffs maintain this suit as a "related action" to *Rux* under § 1605A(b) and file this suit within § 1605A(b)'s limitations period.

B.   *Kumar v. the Republic of Sudan* , 880 F.3d 144 (4th Cir. 2018), *cert. denied*, 139 S.Ct. 1445 (2019).[2]

**5.5**      After the enactment of 28 U.S.C. § 1605A in 2008, the Plaintiffs in *Rux* refiled a complaint on April 15, 2010 against Sudan under this new statute. *See id.* at 151; *Rux v. Republic of Sudan,* 410 F. App'x. 581, 585 (4th Cir. 2011). Like *Rux,* the *Kumar* plaintiffs sought money damages against Sudan arising out of the October 12, 2000 USS Cole attack. *Kumar*, 880 F.3d at 151. In fact, before ultimately vacating the 2015 judgment rendered against Sudan, the Fourth Circuit Court of Appeals observed that the *Kumar* plaintiffs consist of all the original *Rux* plaintiffs plus several new plaintiffs. *Id*. at n.2. For this reason, the Court noted that for the purpose of its decision, *Rux* and *Kumar* "stand on the same legal footing." *Id*.

---

[1] *See* Case # 2:04-cv-00428-RGD-TEM.
[2] *See* Case # 2:10-cv-00171-RGD-RJK.

**5.6**     Because of the legal and factual similarities between *Rux* and *Kumar*, Plaintiffs also maintain this suit as a related action to *Kumar* under 28 U.S.C. § 1605(A)(b).

**VI.**
**LIABILITY**

**A.     Intentional Inflection of Emotional Distress**

**6.1**     This Court has previously held that "[a]cts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009) (citing *Stethem v. Islamic Republic of Iran*, 202 F. Supp. 2d 78, 89 (D.D.C. 2002)). The material support Defendants Sudan and Iran provided to Al-Qaeda and Osama Bin Laden fostered the terrorist organization's success and ultimately allowed Al-Qaeda to perpetrate the October 12, 2000 attack on the USS Cole. *See Flanagan,* 87 F. Supp. 3d at 116–17.

**6.2**     Therefore, the material support provided to Al-Qaeda and Bin Laden by Defendants constitutes extreme and outrageous conduct intended to cause Plaintiffs severe emotional distress. These actions were undertaken deliberately and recklessly, with knowledge that the material support provided to Al-Qaeda and Bin Laden would cause severe emotional distress to the twenty-five (25) Navy-Plaintiffs aboard the USS Cole at the time of the bombing and their immediate family members—in other words, the Plaintiffs in this Complaint.

**6.3**     Defendants, by engaging in this intentional, unlawful conduct, intentionally inflicted emotional distress upon Plaintiffs and may be held jointly and severally liable for Plaintiffs damages under 28 U.S.C. § 1605A(c). *Id*. at 116.

**B.     Solatium**

**6.4**     Moreover, because of Defendants' intentional, outrageous, and extreme conduct, the immediate family members of the Navy-Plaintiffs aboard the USS Cole have suffered mental

anguish, bereavement, grief, and loss of society and comfort. Accordingly, Defendants are liable for solatium damages suffered by the Family-Plaintiffs in this Complaint. *See Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 79 (D.D.C. 2010) (noting that relatives of surviving servicemen qualify for solatium damages under the FSIA).

**C.    Punitive Damages**

**6.5**    28 U.S.C. § 1605A(c) specifically authorizes a claim for punitive damages arising from state-sponsored acts of terrorism. The planning and execution of the USS Cole attack by Osama Bin Laden and Al-Qaeda were malicious, willful, unlawful, reckless, and carried out in wanton disregard for life and the standards of law that govern the actions of civilized nations. However, Defendants' provision of material support to Al-Qaeda and Bin-Laden is equally heinous. *See Flanagan*, 87 F. Supp. 3d at 119. Additionally, by supporting Bin Laden and Al-Qaeda, Defendants clearly intended to further their own anti-American agenda. *See id.*

**6.6**    In FSIA actions, this Court has also acknowledged the significant need to impose punitive damages to defer liable defendants from committing future acts of terrorism. *See, e.g.*, *id*. at 122 ("Were this Court not to impose punitive damages for what was a spectacular terrorist act, this would be read by Iranian government officials as indicating a significant weakening of U.S. pressure on Iran to end its support for terrorism against Americans."). Furthermore, Iran remains a significant threat to United States citizens living in the Middle East. *See* U.S. DEPT. OF STATE, OUTLAW REGIME: A CHRONICLE OF IRAN'S DESTRUCTIVE ACTIVITIES (Sep. 25, 2018) at 11, https://www.state.gov/wp-content/uploads/2018/12/Iran-Report.pdf (concluding "Iran's support for Shia militants in Iraq remains the primary threat to US personnel there.").

6.7     Lastly, Sudan's and Iran's tremendous wealth supports an award for punitive damages. Specifically, the Heritage Foundation estimated Sudan's 2020 GDP at $**177.7 billion.** *See* https://www.heritage.org/index/country/sudan (last visited June 11, 2020) (emphasis added). The Heritage Foundation estimated Iran's 2020 GDP at $**1.6 trillion.** *See* https://www.heritage.org/index/country/iran (last visited June 11, 2020) (emphasis added).

6.8     For these reasons, Plaintiffs are entitled to recover punitive damages from Defendants under 28 U.S.C. § 1605A(c). *See Flanagan,* 87 F. Supp. 3d at 118–22.

## VII.
## DAMAGES & PRAYER FOR RELIEF

7.1     **WHEREFORE**, Plaintiffs request that this Court grant judgment in their favor against Defendants, jointly and severally, and grant the following relief:

a. Economic damages—including but not limited to lost wages, benefits and retirement pay, and other out-of-pocket expenses—for the Navy-Plaintiffs;

b. Damages for pain and suffering consistent with the framework for assessing such damages developed by this Court in previous FSIA cases, including any upward departures the Court deems appropriate, for the Navy-Plaintiffs[3];

c. Solatium damages for the mental anguish, bereavement, grief, and loss of society and comfort suffered by the Family-Plaintiffs consistent with the framework for awarding such damages for family members of surviving terrorist victims in previous FSIA cases, including any upward departure the Court deems

---

[3] *See, e.g., Opati v. Republic of Sudan,* 60 F. Supp. 3d 68, 77 (D.D.C. 2014) ("courts in this district have developed a general framework for assessing pain-and-suffering damages for victims of terrorist attacks…"); *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 54 (D.D.C. 2007) (departing upward from a $ 5 million baseline in more severe instances of physical and psychological pain suffered by terrorist victims).

appropriate for aggravating circumstances[4];

**d.**   Punitive damages against Defendants in an amount consistent with the 3.44 to 1 ratio used by this Court in multiple FSIA cases;[5]

**e.**   Interest;

**f.**   Reasonable cost and expenses;

**g.**   Reasonable attorney's fees; and

**h.**   Such other and further relief that the Court may determine to be just and equitable under the circumstances.

Dated:  June 12, 2020

Respectfully submitted,

/s/ Matthew D. McGill
Matthew D. McGill (D.C. Bar No. 481430)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone:  (202) 955-8500
Facsimile:  (202) 530-9522
mmcgill@gibsondunn.com

Craig W. Carlson (*D.C. admission pending*)
**THE CARLSON LAW FIRM, P.C.**
100 East Central Expressway
Killeen, TX 76541
Telephone: (254) 526-5688
Facsimile: (254) 526-8204
ccarlson@carlsonattorneys.com

*Attorneys for Plaintiffs*

---

[4] *See Murphy,* 740 F. Supp. 2d at 79 ("Relatives of surviving servicemen received awards valued at half of the awards to family members of the deceased…").

[5] *See id.* at 82 ("The Court thus concluded that for every dollar's worth of injury as measured by compensatory damages, the appropriate amount needed to punish defendants for and deter defendants from terrorism was $3.44 (when rounded to the nearest cent).").